COMMONWEALTH *vs.* THOMAS SPERRAZZA.

Norfolk. September 10, 1979. — November 5, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Homicide. Practice, Criminal,* Directed verdict, Isolation of jury, Open-
ing statement by prosecutor. *Joint Enterprise. Evidence,* Other of-
fense, Cross-examination, Common criminal enterprise, Photograph,
Unresponsive answer. *Error,* Harmless.

There was no error in the denial of motions for directed verdicts at the
trial of indictments for kidnapping and murder in the first degree
where there was evidence that the defendant and a male companion
joined in the common enterprise of killing two young women to elimi-
nate them as witnesses to the killing of a man outside a bar by the de-
fendant, following which he helped his companion drag one of the
women into an automobile and later struggled with her, gagged, at
the entrance to a basement apartment, and that the other victim, who
had been present in the automobile outside the bar, had not gone
voluntarily into the apartment, the last place the women were seen
alive. [168]
At the trial of indictments for the kidnapping and murder of two young
women, there was no error in the admission in evidence of the shooting
and killing of a man by the defendant witnessed by the women and oc-
curring shortly before the crimes against them. [168-169]
At the trial of indictments for the kidnapping and murder of two young
women, the judge did not abuse his discretion in limiting cross-exami-
nation of a prosecution witness as to an allegedly false report by her to
the police. [169]

INDICTMENTS found and returned in the Superior Court
on November 30, 1977.

The cases were tried before *Donahue,* J.

*Joseph F. Killion* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Com-
monwealth.

BRAUCHER, J.   By four indictments the defendant was charged with the kidnapping and murder in the first degree of two young women.   He was found guilty by a jury of all four offenses and sentenced to the Massachusetts Correctional Institution at Walpole to serve concurrent life sentences on the murder convictions, from and after a previous sentence,[1] and concurrent eight to ten year sentences, from and after the life sentences, on the kidnapping verdicts.   He appeals pursuant to G. L. c. 278, §§ 33A-33G.[2]   We affirm.

The prosecution presented evidence of the following facts.   About 9 P.M. on February 21, 1975, the defendant and John Stokes picked up the victims, Karen Spinney and Susan Webster, both eighteen years old, at Webster's home in an automobile driven by Stokes.   After several stops, they went to a Roslindale bar.   The defendant and Webster went into the bar, and there was a confrontation between the defendant and Anthony DiVingo, who knew Webster.   Later, outside the bar, the defendant fired a single shot from a revolver, which hit DiVingo and killed another man who was behind DiVingo.   Immediately thereafter, Stokes came running across the street, firing several shots.   Webster was standing in front of the bar, screaming.   The defendant and Stokes ran back across the street to the automobile, and yelled to Webster to come; she ran across the street and was dragged or pulled into the car by the defendant and Stokes.

About 11:30 P.M. the defendant and Stokes arrived at the basement apartment of Thomas Maher and Diane Wazen in Quincy.   They asked the occupants to leave so they could

---

[1] The defendant was previously before this court on an appeal from a conviction of murder in the second degree for the shooting death of a man in front of a Roslindale bar, described hereafter.   *Commonwealth* v. *Sperrazza,* 372 Mass. 667 (1977).

[2] These sections, with the exception of § 33E, were repealed effective July 1, 1979, by way of conforming the General Laws to the new Massachusetts Rules of Appellate Procedure.   St. 1979, c. 346.   This appeal, however, is not subject to the new Massachusetts Rules of Criminal Procedure, 378 Mass. 842, effective July 1, 1979.   As to the application of the new rules of appellate procedure, see Mass. R. A. P. 1B, 378 Mass. 924 (1979).

talk to two men, and Maher and Wazen left. Wazen saw
the defendant and Stokes with two young women on the
stairs leading down to the basement apartment; the defend-
ant was struggling with one of the young women, whose
mouth was gagged. About midnight Spinney called a friend
named Sandra on the telephone and said, "Sandy, Sandy,
Sandy"; a loud masculine voice then said, "Put the phone
down." Maher and Wazen returned to their apartment
about 4:45 A.M. No one was there, but the lights and stereo
were left on. Blood was spattered about the apartment,
and a knife and a sleeping bag were missing.

The victims were not again seen alive. On September 15,
1977, more than two and one-half years after they disap-
peared, their remains were found buried in a wooded area
in Northampton, together with a knife and a sleeping bag
similar to those missing from the basement apartment.

1. *Directed verdicts.* There was no error in the denial of
the defendant's motions for directed verdicts. The evidence
that the defendant helped drag Webster into the car, to-
gether with the evidence that he struggled with a young
woman who was gagged at the entrance to the basement
apartment, adequately supported the charge that he kid-
napped her. The jury could have inferred that Spinney was
present in the car at the Roslindale bar and that she went in-
to the basement apartment in Quincy; from the treatment
of Webster and the telephone call to "Sandy," they could
further infer that she did not go voluntarily. The jury were
also warranted in inferring that Stokes and the defendant
joined in the common enterprise of killing the victims, and
that the defendant never withdrew. Such a common enter-
prise, motivated by a desire to eliminate witnesses to the
killing at the Roslindale bar, would inevitably involve delib-
erate premeditation. The case was not submitted to the
jury on a theory of felony-murder or of murder with extreme
atrocity or cruelty.

2. *Evidence of the prior murder.* The judge allowed the
prosecutor in his opening to refer to the Roslindale shooting,
but prohibited reference to the defendant's prior murder

conviction.  Evidence of the shooting and of the death of a victim was admitted, including a photograph of the victim, his hospital record, and his death certificate.  The defendant argues that the result was to show that he was guilty of a prior murder, to his prejudice.  We hold that the Commonwealth was entitled to introduce evidence of the prior murder to show the defendant's motive for killing the two women who might have been witnesses against him.  *Commonwealth* v. *Feci*, 235 Mass. 562, 566-568 (1920) (evidence of theft to show motive to murder witness).  See *Commonwealth* v. *Hoffer*, 375 Mass. 369, 372 (1978).  The judge so ruled, and instructed the jury that the shooting evidence was admitted only to show the motive for the defendant's subsequent conduct.  There was no error.

3. *Limitation of cross-examination.*  Wazen was an important witness for the Commonwealth, the only witness to the defendant's presence at the basement apartment.  On cross-examination the defendant sought to inquire into a report by her, late in 1976 or early in 1977, that she had been kidnapped.  At a bench conference defense counsel indicated that he hoped to establish that she had made a false report to the police, and thus to impeach her credibility.  In general, evidence of prior false allegations has been excluded as a consequence of the rule that evidence of prior bad acts may not be used to impeach a witness's credibility.  *Commonwealth* v. *Bohannon*, 376 Mass. 90, 93 (1978), and cases cited.  Such evidence was held admissible in the special circumstances of the *Bohannon* case: the witness was the victim in the case on trial, her consent was the central issue, she was the only Commonwealth witness on that issue, her testimony was inconsistent and confused, and there was a basis in independent third-party records for concluding that the prior accusations of the same type of crime had been made and were false.  *Id.* at 95.  The present case does not have those features, and we find no abuse of the judge's discretion to limit cross-examination on a collateral matter. See *Commonwealth* v. *Franklin*, 366 Mass. 284, 288-291 (1974).

4. *Other issues.* The defendant assigns a number of other alleged errors which do not require extended discussion.

a. The decision not to sequester the jury was a matter for the judge's discretion. *Commonwealth* v. *Marshall,* 373 Mass. 65, 68 (1977). The judge repeatedly instructed them not to read or listen to publicity about the trial, asked them at the start of each trial day whether they had been exposed to such publicity, and noted their negative answers.

b. The defendant objects to the prosecutor's opening as excessively detailed. But he points to no violation of the principles summarized in *Commonwealth* v. *Fazio,* 375 Mass. 451, 453-457 (1978).

c. The admission in evidence of photographs of the victims' bodies rests in the sound discretion of the judge. *Commonwealth* v. *Stewart,* 375 Mass. 380, 385 (1978).

d. The Commonwealth was permitted to introduce testimony that Stokes died in 1976. The obvious purpose was to prevent speculation and incorrect inferences by the jury. See 2 J. Wigmore, Evidence § 290 (3) (3d ed. 1940). A defense witness later testified without objection that Stokes was "murdered" in prison. The prosecutor incorrectly stated in argument that Stokes was "stabbed to death." We are convinced beyond a reasonable doubt that any error in this respect was harmless.

e. Wazen testified that Stokes and the defendant came into the basement apartment, and that Stokes made statements. The statements were admitted in evidence under the exception to the hearsay rule for statements made during the course of and in pursuance of a common enterprise. *Commonwealth* v. *Simpson,* 370 Mass. 119, 122 (1976). The judge's instructions on this point are considered hereafter.

f. Wazen testified that a television news report of the discovery of two bodies, the knife and the sleeping bag "just kind of rang a bell" that the slaying of the victims "is probably what happened at the apartment." The judge immediately excluded the testimony, and he had instructed the

jury to disregard testimony ordered struck. There was no error. See *Commonwealth* v. *Simpson, supra* at 125-126.

g. Wazen testified on cross-examination that she did not report the 1975 incident to the police until 1977. By way of explanation on redirect examination, she testified that Maher had told her "to shut up and get in the car or I would get hurt." This testimony was admissible to show that she was frightened. *Commonwealth* v. *Douglas,* 354 Mass. 212, 225-226 (1968), cert. denied, 394 U.S. 960 (1969).

h. The State police chemist testified that he found small spots of human blood on Wazen's bed frame thirty-four months after the incident in the basement apartment. Whether or not this evidence was too remote, its admission was harmless beyond a reasonable doubt. See *Commonwealth* v. *Marini,* 375 Mass. 510, 520-521 (1978).

i. The forensic pathologist who examined the bodies of the victims testified, in answer to a hypothetical question, that the victims died "on or about February 21, 1975." The defendant now argues that it was error to allow him to give such an opinion. No such objection was made at trial, and the point is not now open. In any event, his complete testimony made it clear that death within one or two years of discovery of the bodies was also consistent with his examination.

j. The defendant complains of the prosecutor's closing argument in a number of respects. Aside from the reference to the stabbing of Stokes, which we discussed above, we find no impropriety.

k. The judge instructed the jury on joint enterprise three times, once at the end of the direct examination of Wazen, once at the close of the Commonwealth's case, and once in his charge after the evidence was closed. The result was to make it clear to the jury that they could make a preliminary finding that the defendant and Stokes were engaged in a joint criminal enterprise. Upon such a finding they could consider the acts and statements of Stokes during the continuation of the enterprise as evidence against the defendant. See *Commonwealth* v. *Borans, ante* 117, 145-148

(1979). The defendant now argues that the evidence of his participation was insufficient to establish that he joined in such a joint enterprise. As we have said in connection with his motions for directed verdicts, we disagree.

5. *Section 33E.* Examining the entire record as required by G. L. c. 278, § 33E, we find no reason to disturb the convictions.

*Judgments affirmed.*