■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELEUTORIO CORTIJO, Appellant. [739 NYS2d 19] —Judgment, Supreme Court, New York County (Charles Solomon, J.), rendered October 5, 1999, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, unanimously affirmed.

Defendant's suppression motion was properly denied. While defendant was in custody awaiting sentencing for an unrelated narcotics case on which he had counsel, he was interviewed by a probation officer who was preparing a presentence report. When, in taking a family history, the probation officer asked defendant where his father was, defendant replied, "I killed him," and then said, "I killed him, no I didn't kill him, somebody else did." At this point the probation officer asked "Well, what happened to that person?" and defendant replied, "I don't know. No, I killed my father." The probation officer reported these events to the District Attorney's office, which reopened an investigation into defendant's father's death. As a result, detectives interviewed defendant while he was serving a prison sentence and obtained additional incriminating statements.

Defendant concedes that the initial question about his father was properly within the scope of the probation officer's duties in preparing a report, but argues that the second question, inquiring about what happened to the purported killer, constituted interrogation in violation of defendant's right to counsel under *People v Rogers* (48 NY2d 167), and also should have been preceded by *Miranda* warnings. We reject these arguments, since a presentence interview does not constitute a stage of the proceedings at which the right to counsel attaches (*United States v Jackson*, 886 F2d 838, 844-845 [7th Cir 1989]), and since the record establishes that none of defendant's statements to the probation officer was the product of an interrogation intended to elicit incriminating statements. In asking the challenged question about what happened to defendant's father's killer, the probation officer did not take on the role of a criminal investigator, but was simply continuing to elicit background information of the type needed for the presentence report. In any event, the challenged question was followed by the same admission that defendant had just made.

Defendant further argues that all of his statements to the probation officer, as well as his subsequent statements to detectives, should be suppressed as the result of the probation officer's alleged violation of the confidentiality provisions of CPL 390.50 by reporting defendant's statement to the District At-

torney's office. However, the statute clearly provides that the prosecutor was entitled to see a copy of the presentence report (CPL 390.50 [2] [a]), and thus there was no breach of confidentiality in the disclosure of that which defendant said in the interview used to prepare the report. Defendant further argues that the probation officer was obligated to inform the sentencing court in the pending narcotics case about the statements at issue. However, there is no such statutory requirement, and defendant's assertion that had such disclosure been made he would have been provided with legal representation in the instant murder case is speculative.

None of defendant's other claims warrant reversal. The statement defendant blurted out as soon as the detective announced his reason for visiting him in prison was clearly spontaneous and was not the product of the functional equivalent of interrogation (*People v Rivers*, 56 NY2d 476). The court's supplemental charge meaningfully responded to a jury note (*see, People v Malloy*, 55 NY2d 296, *cert denied* 459 US 847), and correctly stated the law with respect to the People's burden of proving that defendant's statements were truthful. Defendant's remaining contentions are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them. Concur—Williams, J.P., Lerner, Buckley, Friedman and Marlow, JJ. [*See* 179 Misc 2d 178.]