# COMMONWEALTH *vs.* JUSTINA TALBOT.

Hampden. March 10, 2005. - July 7, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Expert opinion, Cumulative evidence, Cross-examination, Prior misconduct, Credibility of witness. *Witness,* Credibility. *Practice, Criminal,* Sentence, Postconviction relief, Probation, Parole. *Constitutional Law,* Assistance of counsel, Ex post facto law.

At the trial of indictments charging the defendant with forcible rape and indecent assault and battery, both on a joint venture theory, the judge did not err in excluding expert medical testimony from the defendant's treating endocrinologist that the defendant, a diabetic, experienced episodes of hypoglycemia that could have affected her ability to share the requisite mental intent for the assaults, where the defendant failed to point to any evidence that she actually had experienced a hypoglycemic episode at the time of any of the assaults [589]; further, the defendant failed to demonstrate that it was error to exclude the expert testimony on her diabetic condition because it supported her claim that one victim (her older daughter) had fabricated the allegations of sexual abuse in order to escape the responsibilities that the defendant's condition had imposed on the victim, where such testimony would have been cumulative of other evidence, and where the victim's motive to lie was sufficiently aired [589-590].

At the trial of indictments charging the defendant with forcible rape and indecent assault and battery, the trial judge did not err in denying the defendant the opportunity to cross-examine one victim concerning the victim's prior false allegation of sexual abuse, where the victim's prior allegation did not meet the requirements for admission under the narrow exception of *Commonwealth* v. *Bohannon,* 376 Mass. 90, 92-96 (1978), *S.C.,* 385 Mass. 733 (1982), namely that the victim's consent be the central issue in the case and that there be a basis in independent third-party records for concluding that the prior accusation had been made and was false. [590-591]

This court concluded that if requested by a convicted criminal defendant or defendant's counsel, probation officers seeking to conduct a presentence interview of the defendant must give counsel notice and a reasonable opportunity to attend the interview. [593-596]

A trial court judge did not err in declining to grant a criminal defendant's motion for postconviction relief, brought on the ground that a probation officer had failed to honor defense counsel's request to participate in a presentence interview, where the report and records obtained during the interview (and upon which the trial judge relied in sentencing the

defendant) contained nothing prejudicial to the defendant, and were cumulative of evidence presented at trial. [596-597]

This court concluded that a criminal defendant's sentence of lifetime community parole under G. L. c. 265, § 45, violated the prohibitions against ex post facto laws contained in art. 1, § 10, of the United States Constitution, and art. 24 of the Massachusetts Declaration of Rights, where the conduct for which the defendant was sentenced predated the enactment of G. L. c. 265, § 45. [597-598]

INDICTMENTS found and returned in the Superior Court Department on January 27, 1999.

The cases were tried before *Peter A. Velis*, J., and motions for postconviction relief were heard by him; a motion for order of transmission of presentence report to the Appeals Court, for an impoundment order, and for provision of a copy of the presentence report was heard in the Appeals Court by *Kenneth Laurence*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

*John F. Palmer*, for Massachusetts Association of Criminal Defense Attorneys, amicus curiae, submitted a brief.

SPINA, J. The defendant was convicted, under a joint venture theory, of the forcible rape and the indecent assault and battery of her minor daughters by her boy friend. On appeal she asserts error in the exclusion of expert testimony concerning (1) the effects of her diabetes on her ability to recognize the sexual abuse of her daughters and, therefore, her ability to share the requisite mental state needed to establish a joint venture; and (2) the family burdens her diabetic condition placed on her older daughter, who, the defendant argues, was motivated thereby to include her falsely in the allegations of sexual abuse in order to escape an oppressive household. The defendant also alleges error in the denial of the opportunity to cross-examine her younger daughter concerning a prior false allegation of sexual relations. Finally, the defendant argues that her sentence should be vacated

because (1) the judge relied on a presentence report prepared by a probation officer who interviewed the defendant and obtained her confidential records in the absence of counsel, contrary to counsel's request that she be present during the interview[1]; and (2) the imposition of lifetime community parole under G. L. c. 265, § 45, G. L. c. 275, § 18, and G. L. c. 127, § 133D, is not authorized by the statutes, which were enacted after the commission of the offenses for which she was convicted; and even if it is authorized under the statutes, this aspect of her sentence would violate State and Federal constitutional prohibitions against ex post facto laws.

We affirm the convictions, but vacate the defendant's sentence and remand for resentencing by the same judge because we conclude that she may not be sentenced to lifetime community parole.

1. *Background.* The jury could have found the following facts. The defendant, who has four children, had a lengthy relationship with Fernand Daviau that ended in December, 1998. The defendant told her daughters, who are not Daviau's children, that she was going to prepare them for marriage. She demonstrated on Daviau some of what she had counselled was expected sexually. Daviau separately engaged the girls in sexual activity, including fellatio and digital penetration of the vagina. Sexual intercourse was reserved until the thirteenth birthday. By December, 1998, the defendant's older daughter, who then was fourteen years old, and the younger daughter, who was ten years old at the time, had endured this treatment for four and two years, respectively, out of fear that they would be beaten either by Daviau or the defendant, or by both.

On December 19, 1998, Daviau beat the defendant with his fists. Fearing she would be next, the defendant's younger daughter ran away from home. The older daughter went looking for her, and eventually found her. Rather than return home, the two girls sought help from a family friend, who telephoned police. Officers arrived shortly, and the girls were removed from the family home.

[1]We acknowledge the amicus brief filed by the Massachusetts Association of Criminal Defense Attorneys on this issue.

2. *Expert testimony.* The defendant first alleges error in the exclusion of expert medical testimony from her treating endocrinologist concerning the nature, intensity, and consequences of her lifelong diabetic condition. In particular, she contends that she experienced regular episodes of hypoglycemia that either left her semiconscious or caused her to pass out, and that if an episode occurred during one of the sexual assaults on her daughters, she would have been unaware of the assault and therefore could not be liable as a joint venturer because she could not have shared the requisite mental intent for the sexual assaults. See *Commonwealth* v. *Funches*, 379 Mass. 283, 295 (1979).

The flaw in the defendant's argument is her failure to point to any evidence that she had experienced a hypoglycemic episode at the time of any of the sexual assaults. The judge correctly ruled[2] that the expert testimony was not relevant to the issue of the defendant's mental state at the time the crimes were committed. Cf. *Commonwealth* v. *Cruz*, 413 Mass. 686, 690-691 (1992) (evidence of defendant's mental condition due to intoxication and its effect on his state of mind at relevant time, admissible on issue of intent); *Commonwealth* v. *Laliberty*, 373 Mass. 238, 241 (1977) (opinion concerning defense of lack of criminal responsibility not admissible absent evidence that defendant suffered from mental disease or defect at time of crime).

There is no merit to the defendant's second argument that it was error to exclude the testimony of her expert because it supported her claim that her older daughter had fabricated allegations of sexual abuse in order to escape the responsibilities the defendant's diabetic condition had thrust on the girl for the care of her mother and three younger siblings. There was no dispute that the defendant suffered from a severe form of diabetes that required close and frequent monitoring, or that the defendant's older daughter bore much of the responsibility for the

[2]Generally, a trial judge is accorded "substantial discretion in deciding whether evidence is relevant," and whether relevant evidence should be excluded if it is less probative than prejudicial. *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984). The judge's decision will stand absent palpable error. *Commonwealth* v. *Booker*, 386 Mass. 466, 470 (1982).

monitoring. Except for a few insignificant details, there was no dispute over the girl's responsibilities for housekeeping and the general care of her younger siblings due to her mother's diabetic condition, or that she was subject to strict rules concerning dating, the use of cosmetics, and the type of music she was allowed to hear. Evidence of the older daughter's motive to fabricate allegations of sexual abuse in order to escape the burdens of the family was aired fully before the jury, both in the testimony of various Commonwealth and defense witnesses, and in the opening statement and closing argument of defense counsel.

There is no claim that the older daughter understated the severity of the defendant's diabetic condition in any material respect, an occurrence the judge implied would warrant revisiting the question of admission of the expert's testimony. The expert's testimony would have added little, if anything, to the defendant's impeachment of her older daughter with evidence of her motive to lie. The judge did not abuse his discretion, or deny the defendant's rights to present a defense or to cross-examine the witness under art. 12 of the Massachusetts Declaration of Rights or the Sixth Amendment to the United States Constitution, by excluding testimony that essentially was cumulative, see *Commonwealth* v. *Durning*, 406 Mass. 485, 494-495 (1990), and where the issue of the witness's motive to lie was sufficiently aired. See *Commonwealth* v. *Smiledge*, 419 Mass. 156, 159 (1994).

3. *Prior false allegation of sexual abuse.* The defendant sought to introduce evidence that when her younger daughter was seven years old, she was overheard by a teacher telling another student that she was "having sex with [her] old boy friend." Following an investigation by school officials, she stated that "she didn't mean it" and "it was a joke."

Contrary to the defendant's claim, the evidence is not admissible under the narrow exception of *Commonwealth* v. *Bohannon*, 376 Mass. 90, 92-96 (1978), *S.C.*, 385 Mass. 733 (1982) (prior false allegation of rape), to the general rule barring evidence of prior bad acts to impeach a witness's credibility. Admissibility under the *Bohannon* rule requires a showing that "the witness was the victim in the case on trial, her consent

was the central issue, she was the only Commonwealth witness on that issue, her testimony was inconsistent and confused, and there was a basis in independent third-party records for concluding that the prior accusations of the same type of crime had been made and were false." *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 169 (1979). The younger daughter's consent was not the central issue in the indictments for which she was the alleged victim. The central issue was whether a sexual assault occurred about which the defendant had knowledge. In addition, the mere fact that the witness had said she was joking does not establish that her statement was false. See *Commonwealth* v. *Savage*, 51 Mass. App. Ct. 500, 503 (2001). Moreover, the context in which the statement was made does not establish the necessary "crying wolf" pattern to the allegations. See *Commonwealth* v. *LaVelle*, 414 Mass. 146, 152 n.4 (1993). There was no error.

4. *Presentence investigation.* After the jury returned their verdicts, and before sentencing, the judge ordered a presentence investigation and report pursuant to Mass. R. Crim. P. 28 (d), 378 Mass. 898 (1979). At that time the assistant chief probation officer and defense counsel discussed getting together regarding information the defendant was willing to provide for the presentence investigation.[3] Counsel followed through and left a telephone message for the assistant chief probation officer. Counsel later received a telephone call from a probation officer who informed her that he had been assigned to conduct the presentence investigation and had just returned from interviewing the defendant, who was being held at a local house of correction. Counsel requested that he contact her before speaking again with the defendant.

During the presentence interview with the probation officer, the defendant asked why she was being interviewed in the absence of her lawyer. The probation officer explained that she could have her lawyer assist her, but the judge then would be kept waiting for the information needed for sentencing. He

---

[3] The judge made no findings as to what occurred with respect to counsel's request to participate in the presentence investigation, but the details recited above, taken from affidavits of defense counsel and the defendant, were not contradicted.

further explained that it was his job to help her, and that he could help her so long as she told him the truth. The defendant understood him to mean that he would help her receive a more favorable sentence. He asked her questions about the case, which she answered.[4] At his request, the defendant signed releases for school, medical, psychiatric, and psychological records, although she claims to have no recollection of doing so. The probation officer reported to counsel that the defendant answered his questions about the case, but that she was unable to answer questions about her past. He said she was "all over the place" and appeared essentially unstable.

When the presentence report was made available to counsel, she noticed that it contained damaging statements made by the defendant. Attached to the report were copies of the defendant's school, medical, psychiatric, and psychological records, and copies of releases signed by the defendant the same day the probation officer interviewed her at the house of correction. Counsel previously had no knowledge that the defendant had signed any releases.

The defendant was sentenced to two concurrent terms of from thirty-five to forty years in the State prison on the indictments alleging forcible rape of a child, and a concurrent probationary term of ten years on one indictment alleging indecent assault and battery on a child under fourteen years. The concurrent probationary term requires the defendant to participate in and complete certain counselling while incarcerated. She also was sentenced to a probationary term of twenty years on the second indictment alleging indecent assault and battery on a child under fourteen years, from and after the prison sentences. The prosecutor had recommended concurrent terms of from thirty to forty years followed by a probationary period of twenty years. Daviau, who was tried separately, had been sentenced to life imprisonment plus other lesser concurrent sentences, and a consecutive probationary term of twenty years.

On the day of sentencing (the record is unclear whether before or after sentencing), defense counsel filed an ex parte motion for the immediate return of the records attached to the presen-

---

[4]The defendant did not testify at trial.

tence report. She alleged that, pursuant to G. L. c. 233, § 20B (psychiatric and medical records), and G. L. c. 112, § 135A (records of licensed family therapist), the records were privileged and confidential. She also alleged they were obtained in violation of the defendant's rights under the Fifth and Sixth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The motion was allowed. For reasons that are not clear, the records have not been returned. The defendant subsequently filed an ex parte motion to impound her privileged records. That motion was allowed, but after reconsideration on a motion filed by probation, the records were released to the probation department for use in supervising the defendant and for use by the Department of Correction and the sex offender registry board. The defendant appealed from the order on reconsideration.

The defendant also filed, after sentencing, a motion to strike from the presentence report the statements she made to the probation officer, and for resentencing before a different judge. She claimed that the judge must have been influenced by statements she made to the probation officer and by the incorporation of her privileged and confidential records in the presentence report, which she alleged were obtained in violation of her Fifth and Sixth Amendment rights and her rights under art. 12. The motion was denied. She appealed from the denial of that motion.

We treat the defendant's motion for resentencing by a different judge and to strike portions of the presentence report as a motion for postconviction relief under Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). See *Leaster* v. *Commonwealth*, 385 Mass. 547, 549 (1982) ("Rule 30 was adopted in 1979 as the exclusive vehicle for postconviction relief"). Our review of the denial of that motion is for an abuse of discretion or whether "it appears that justice may not have been done." *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995), quoting Mass. R. Crim. P. 30 (b).

A majority of courts that have considered whether a presentence interview is a "critical stage of the prosecution" for purposes of the Sixth Amendment right to counsel, *Kirby* v.

*Illinois*, 406 U.S. 682, 690 (1972), have concluded that, because such interviews are not adversarial, they are not a critical stage and the Sixth Amendment right to counsel does not attach. See *Castro* v. *Ward*, 138 F.3d 810, 821-822 (10th Cir.), cert. denied sub nom. *Castro* v. *Gibson*, 525 U.S. 971 (1998); *United States* v. *Tisdale*, 952 F.2d 934, 939-940 (6th Cir. 1992); *United States* v. *Hicks*, 948 F.2d 877, 885-886 (4th Cir. 1991); *United States* v. *Jackson*, 886 F.2d 838, 845 (7th Cir. 1989); *Brown* v. *Butler*, 811 F.2d 938, 941 (5th Cir. 1987); *Baumann* v. *United States*, 692 F.2d 565, 578 (9th Cir. 1982); *Musgrove* v. *State*, 638 So. 2d 1347, 1352 (Ala. Crim. App. 1992), aff'd, 638 So. 2d 1360 (Ala. 1993), cert. denied, 513 U.S. 845 (1994); *State* v. *Pete*, 857 So. 2d 1107, 1110 (La. Ct. App. 2003); *People* v. *Daniels*, 149 Mich. App. 602, 607 (1986); *State* v. *Barber*, 494 N.W.2d 497, 501-502 (Minn. Ct. App. 1993); *People* v. *Cortijo*, 291 A.D.2d 352 (N.Y. 2002); *Commonwealth* v. *Burton*, 451 Pa. 12 (1973); *State* v. *Knapp*, 111 Wis. 2d 380 (Ct. App. 1983). Two courts have held that a defendant has a Sixth Amendment right to counsel during a presentence interview, reasoning that a court indirectly through a probation officer may not obtain information from a defendant in the absence of counsel that a judge may not obtain directly in open court. See *State ex rel. Russell* v. *Jones*, 293 Or. 312, 317 (1982); *In re Carter*, 176 Vt. 322, 347-348 (2004).

Two circuit courts of the United States Court of Appeals have concluded that, even if the Sixth Amendment does not afford a right to counsel during a presentence interview, as a matter of basic fairness they would exercise their supervisory powers to create a rule requiring probation officers, upon request, to permit an attorney to assist a defendant at the presentence interview. They noted such a rule would create minimal cost to the system. See *United States* v. *Tisdale*, *supra* at 940; *United States* v. *Herrera-Figueroa*, 918 F.2d 1430, 1434 (9th Cir. 1991). In 1994, following those decisions, Congress amended Fed. R. Crim. P. 32, from which Mass. R. Crim. P. 28, 378 Mass. 898 (1979), is derived, see Reporters' Notes to Mass. R. Crim. P. 28, Mass. Ann. Laws, Rules of Criminal Procedure at 1433-1434

(Lexis 2003), to provide: "The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview." Fed. R. Crim. P. 32(c)(2), as amended by Pub. L. 103-322, § 230101(b).

The advisory committee note to the 1994 amendment to Fed. R. Crim. P. 32 states that "permitting counsel to be present during [presentence] interviews may avoid unnecessary misunderstandings between the probation officer and the defendant." While there is no suggestion here that the probation officer was not trying to do his job honorably and with the best of intentions, it is not difficult to see how the defendant could have misunderstood the probation officer's role. Probation officers often take a position that is favorable to a defendant, but the relationship between probation officer and probationer is complex and may change, unlike the relationship between the judge and probation officer or client and attorney. The former relationship may shift based on a perception of merit; the other two are based on clear duty. While the probation officer here might have been in a position to "help" the defendant had circumstances been different, unlike her attorney, he had no duty to try to help her. His duty was to the court. Even if the presentence interview is not a "critical stage" in the criminal process, a point we need not decide, it certainly is an important stage in terms of the consequences it can have for a defendant. It plays a crucial role in the probation officer's recommendation to the judge. As such, it has due process implications with respect to a defendant's interest in a fair and even-handed sentencing proceeding. See *United States* v. *Herrera-Figueroa*, *supra* at 1434.

This case is particularly appropriate for the exercise of our supervisory power. When a probation officer conducts a presentence interview and prepares a presentence report, he is acting as an arm of the court. Because the presentence investigation and report may have a significant impact on a defendant's liberty interest, we agree with the United States Court of Appeals for the Ninth Circuit "that permitting defense attorneys to attend

the presentence interview is consistent with the fundamental principles on which our system of justice is based, and while it is equally clear that counsel's participation at this stage of the proceedings will help protect the rights and interests of defendants, we discern no rational purpose that would be served by excluding counsel." *Id.* at 1436. We hereby direct that, if requested by the defendant or her attorney, probation officers must give the defendant's attorney notice and a reasonable opportunity to attend a presentence interview of the defendant. Having concluded that counsel's request to participate in the presentence investigation should have been honored, we must now decide whether the denial of the defendant's motion for resentencing constituted an abuse of discretion, or whether "it appears that justice may not have been done." Mass. R. Crim. P. 30 (b).

We have reviewed the presentence report and the records attached to it. We find nothing damaging or prejudicial in them. Trial counsel submitted her own sentencing memorandum with reports prepared by the defendant's therapist, a psychologist, and a neuropsychologist on which she relied in her sentencing memorandum. The defendant's own submissions provide details of her medical and psychiatric problems against a backdrop of severe abuse at the hands of Daviau, offered to explain how she could have blocked out what was occurring to her daughters. The records obtained by the probation officer with releases signed by the defendant largely are consistent with the defendant's own submissions. The material in these records essentially was familiar to the judge, as it is cumulative of evidence presented at trial through a defense expert on battered women's syndrome and rejected by the jury. Other material in the reports obtained from the defendant's releases largely are unremarkable.

The defendant made a statement to the probation officer that is included in the presentence report. Although she did not testify at trial, her statement is consistent with one of her defenses at trial.

Although the judge was exposed to some material that the defendant was entitled to keep to herself, it was material that he

had, in one form or another, already seen or heard during the trial. The material generally is cumulative of what occurred at trial, and any differences are in degree, not in kind. We cannot say that "it appears that justice may not have been done." Mass. R. Crim. P. 30 (b). Cf. *Commonwealth* v. *Adkinson*, 442 Mass. 410, 415 (2004) (for purposes of recusal, "defendant ordinarily must show that the judge demonstrated a bias or prejudice arising from an extrajudicial source, and not from something learned from participation in the case").

The defendant's presentence report shall remain impounded[5] pending redaction of her statement and any reference to reports obtained by releases she signed without the benefit of counsel. The defendant also is entitled to the return of the releases she signed and all confidential and privileged records obtained thereby. All copies of such records that have been distributed to other agencies by the probation department must be retrieved and returned to the defendant. Any agent of the Commonwealth who possesses a copy of the defendant's confidential or privileged records obtained directly or indirectly through the probation department must return the records and any duplicate the agent may have in his possession.

5. *Lifetime community parole.* The Commonwealth concedes that the defendant's sentence to lifetime community parole must be vacated because the conduct for which she was indicted predated the enactment of G. L. c. 265, § 45. Lifetime community parole constitutes "an enhanced penalty for sex offenders." *Commonwealth* v. *Renderos*, 440 Mass. 422, 429 (2003). Therefore, it may not be imposed for conduct that had occurred prior to the law's enactment. Such application would violate the prohibitions against ex post facto laws contained in art. 1, § 10, of the United States Constitution, and art. 24 of the Massachusetts Declaration of Rights. See *Opinion of the Justices*, 423 Mass. 1201, 1224 (1996), quoting *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798); *Commonwealth* v. *Fuller*, 421 Mass. 400, 408 (1995). The defendant may not be sentenced on these indictments to lifetime community parole under G. L. c. 265, § 45. Because lifetime community parole may have

---

[5]The defendant or her attorney may have access to the impounded material.

played a part in the judge's over-all concept in sentencing the defendant, the judge must be afforded the opportunity to restructure his sentence.

6. *Conclusion.* The defendant's judgments of conviction are affirmed. The defendant's sentences are vacated, and the case is remanded to the Superior Court for resentencing consistent with this opinion.

*So ordered.*