COMMONWEALTH vs. PEDRO COSTA.

No. 05-P-1145.

Bristol. June 7, 2007. - August 23, 2007.

Present: PERRETTA, DREBEN, & GRAHAM, JJ.

*Practice, Criminal,* Mistrial, Instructions to jury, Argument by prosecutor. *Search and Seizure,* Consent. *Constitutional Law,* Search and seizure. *Evidence,* Prior misconduct, Relevancy and materiality, Impeachment of credibility, State of mind. *Witness,* Credibility.

At a criminal trial, the judge did not abuse his discretion in denying the defendant's motion for a mistrial, which was based on the improper testimony of a Commonwealth witness, where the judge sustained the defendant's objections to the testimony, ordered it stricken from the record, and gave a prompt curative instruction that was adequate to cure any possible prejudice. [826-827]

Where, at a hearing on a criminal defendant's motion to suppress statements that he made to a police officer after his entry into the defendant's home, the evidence amply supported the judge's findings that the officer had entered the home with the uncoerced consent of the defendant's mother, the judge did not err in denying the motion. [827-829]

At the trial of an indictment charging statutory rape, the judge did not abuse his discretion in precluding defense counsel from presenting evidence, offered to impeach the victim's credibility, that the victim had made a false prior accusation of sexual assault, where the evidence failed to establish the prior accusation's falsity, and where, with regard to the current case, the consent of the victim was not a central issue, the victim's testimony was not inconsistent or confused, and there was no pattern of false allegations of the specific crime which was the subject of the trial [829-832]; further, there was no merit to the defendant's argument that evidence of the victim's prior accusation was otherwise admissible to prove state of mind, bias, or a common scheme [832].

Any alleged impropriety in a challenged remark by a prosecutor at a criminal trial was not prejudicial, where the remark was brief, not repeated, and neutralized by the judge's instructions to the jury. [832-833]

INDICTMENT found and returned in the Superior Court Department on April 26, 2002.

A pretrial motion to suppress evidence was heard by *Cathe-*

*rine A. White*, J., and the case was tried before *Frank M. Ga-ziano*, J.

*Jeremia A. Pollard* for the defendant.

*Craig A. Souza*, Assistant District Attorney, for the Commonwealth.

GRAHAM, J. The defendant, Pedro Costa, was convicted by a Superior Court jury of statutory rape of a child (G. L. c. 265, § 23). On appeal, he argues that the motion judge erred in denying his motion to suppress evidence and that the trial judge erred in denying his motion for mistrial and by denying him the right to cross-examine the victim regarding an alleged prior false allegation of sexual assault. In addition, he contends that a portion of the prosecutor's argument was improper and prejudicial. We affirm.

*Facts.* The jury permissibly could have found the following facts.[1] The defendant and the fifteen year old victim met in November, 2001, through a telephone chat line intended for use by teenagers. At the time, the defendant, who was twenty-six years old, arranged to pick up the victim at her home in New Bedford on November 23, 2001, at 8 A.M. After the defendant arrived at the victim's home that morning, the victim told her grandmother that she was leaving the house but would return shortly. Instead, the defendant drove her to Division Street in Fall River, where he parked the car on the street and began kissing her.

Shortly thereafter, Fall River police Officer Robert Costa, Sr., who was on routine patrol in the Division Street area of Fall River, received a communication from the police station directing him to 222 Division Street to investigate an automobile parked on the street in front of that address. When he arrived at the address, Officer Costa observed the defendant in the driver's seat and the victim in the passenger seat. During a twenty minute field investigation, Officer Costa learned the names, dates of birth, and addresses of the defendant and victim, and determined that neither had any outstanding warrants or was the subject of a missing-person report.[2] The defendant claimed that he had been dropped off at that location by a friend and was

---

[1] We reserve additional factual background to be described where pertinent to the legal issues addressed.

[2] Officer Costa also ascertained that the automobile in which the defendant

waiting for the friend to return. Officer Costa, suspicious of the defendant's story, transported both the defendant and the victim to the Fall River police station.

At the station, the police attempted to contact members of the victim's family, but were unsuccessful. The police would not allow the defendant to drive his vehicle,[3] so the defendant called his parents for a ride home. When the defendant's family arrived at the police station, the victim was allowed to leave the station with the defendant and his parents. She accompanied them to the parents' home in New Bedford. The victim remained at the parents' home for the following five days, spending the nights with the defendant in his bedroom.[4]

On November 26, 2001, the victim's family reported her as a runaway to the New Bedford police department. Detective James Jose, who was assigned to the case, quickly learned that the victim had been involved recently with the Fall River police department. Through the Fall River police, Jose obtained the defendant's address and went to the defendant's home the following day. His knock on the door of the defendant's home was answered by the defendant's mother. Jose asked her if the defendant was home. In response, the defendant's mother pointed down the hall.[5] When Jose asked the defendant's mother if the victim was also present in the home, she nodded and pointed again down the hall. At that point, Jose asked her if he could "go and see [the defendant]." In response, the defendant's mother walked further into the house and "pointed into a bedroom."

Jose entered the home and went to the bedroom, where he observed that blankets were covering the bedroom windows and the victim was sitting on the defendant's bed, with the defendant

---

and the victim were found belonged to the defendant's father.

[3]At trial, Officer Costa could not recall if the defendant had a valid driver's license at the time.

[4]The victim left the house with the defendant twice during that period, once to walk to a gasoline station to get cigarettes and once to walk to a nearby housing project.

[5]The defendant's mother testified, through a Portuguese interpreter, at the hearing on the defendant's motion to suppress evidence. The motion judge who denied the defendant's motion to suppress, see *infra*, found that "although [the defendant's mother] did not speak English, she understood it." In support of that conclusion he found that "on frequent occasions she started to answer a question before it was translated into Portuguese by the interpreter."

standing near her. Upon seeing Jose, the defendant became bel-
ligerent, asking Jose, "[W]hat the fuck are you doing in my
house?" When Jose asked the defendant what he was doing
with a fifteen year old girl, the defendant responded "because I
fucking like her" or "because I feel like it." Jose then removed
the victim from the home in handcuffs and took her to the New
Bedford police station. He did not place the defendant under ar-
rest at that time.

At the police station, the victim told Jose that the defendant
had digitally penetrated her and wanted to have intercourse with
her but she refused. Jose had the victim complete a written
statement, then took photographs of "hickeys" on several parts
of her body. After the interview, Jose contacted the victim's
parents, and the victim's father picked her up from the police
station.

The following week, the victim disclosed the rape to a teacher,
who brought the victim to a local hospital where a rape kit was
performed. A copy of the rape kit report was forwarded to Jose,[6]
who brought the victim back to the police station for a second
interview on December 5, 2001. At the second interview, the
victim informed Jose that she had left certain details out of her
first interview, including that the defendant had penetrated her
with a lollipop and a banana.

*Discussion.* a. *Motion to declare mistrial.* During the presenta-
tion of the Commonwealth's case, Jose gave certain testimony
which prompted the defense counsel to object and request a
mistrial. During his testimony, Jose informed the jury that the
victim had reported that the defendant had digitally penetrated
her while she was in his automobile in Fall River. In addition,
Jose testified that the victim had informed him that during one
of her walks with the defendant, the defendant had purchased il-
legal drugs. The judge sustained each objection and ordered the
statements struck from the record. The defendant contends that
the statements were highly prejudicial and that the judge abused
his discretion in denying his motion for a mistrial.

"The declaring of a mistrial is ordinarily within the discre-
tion of the trial judge, who is in the best position to determine

---

[6]Jose, up until that point, had not taken any further action in his in-
vestigation.

whether or not anything has happened likely to affect the justice of the verdict." *Curley* v. *Boston Herald-Traveler Corp.*, 314 Mass. 31, 31-32 (1943). See *Commonwealth* v. *Early*, 349 Mass. 636, 637 (1965). "Where a party seeks a mistrial in response to the jury's exposure to inadmissible evidence, the judge may 'correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant.' " *Commonwealth* v. *Kilburn*, 426 Mass. 31, 37-38 (1997), quoting from *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989). "Generally, as long as the judge's instructions are prompt and the jury do not hear the inadmissible evidence again, a mistrial is unnecessary." *Id.* at 38.

Here, the judge sustained the defendant's objections to Jose's improper testimony and ordered it struck from the record. Moreover, the judge gave a prompt curative instruction that was adequate to cure any possible prejudice stemming from both the narcotics testimony and the challenged testimony regarding digital penetration.[7] See *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 753 (1981) ("By striking the testimony and promptly instructing the jury to disregard it, the judge did all that was necessary to cure any possible error from the admission of the statement"). There was no error.

b. *Motion to suppress.* The defendant alleges that the judge erred in denying his motion to suppress the statements he made when Jose entered his bedroom and the observations Jose made while in the bedroom. He argues that the evidence was obtained as a result of an illegal entry and search of his home by Jose. "Warrantless entries into the home are prohibited by the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights absent either probable cause and exigent circumstances, or consent." *Commonwealth* v. *Rogers*, 444 Mass. 234, 236 (2005). In this case, the Com-

---

[7]Specifically, the judge instructed the jury "to disregard the last statement that was made regarding an attempt to purchase narcotics by both [the defendant] and [the victim]. [The defendant] has been charged with a single crime in this indictment. Your deliberations solely should focus on whether or not he committed this crime. Any testimony or information regarding any other crime is improper and is not to be considered by you at all for any reason."

monwealth relies on the consent of the defendant's mother to justify Jose's entry into the defendant's home.

"When the police rely on consent to justify a warrantless entry, under both the Fourth Amendment and art. 14, the prosecution 'has the burden of proving that the consent was, in fact, freely and voluntarily given.' " *Id.* at 237, quoting from *Bumper* v. *North Carolina,* 391 U.S. 543, 548 (1968). As entry based on consent is an exception to the constitutional warrant requirement, the Commonwealth must demonstrate "consent unfettered by coercion, express or implied, and also something more than mere 'acquiescence to a claim of lawful authority.' " *Commonwealth* v. *Voisine,* 414 Mass. 772, 783 (1993), quoting from *Commonwealth* v. *Walker,* 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). Specifically, the Supreme Judicial Court in *Commonwealth* v. *Rogers, supra* at 238-239 (citations omitted), ruled that:

> "The voluntariness of an individual's consent to a warrantless entry is an issue of fact, and must be examined in light of the totality of the circumstances of the case. Ordinarily, in cases involving consent to enter a defendant's home, entry is preceded by an exchange in which a police officer makes some type of inquiry of an occupant, and in response, the occupant verbally or physically reacts in a manner that is interpreted as 'consent.' Whether consent is voluntary depends on the nature of this interaction between the police and the occupant. In meeting its burden of establishing voluntary consent to enter, the Commonwealth must provide us with more than an ambiguous set of facts that leaves us guessing about the meaning of this interaction and, ultimately, the occupant's words or actions. If either the officer's request or the occupant's response is so ambiguous that we are unable to discern whether the occupant voluntarily consented to entry, our inquiry will be over and the entry must be deemed unlawful."

Further, "we accept the judge's subsidiary findings of fact unless not warranted by the evidence," and while open to review, we afford the judge's "ultimate findings . . . 'substantial deference.' " *Commonwealth* v. *Raymond,* 424 Mass. 382, 395 (1997), quoting from *Commonwealth* v. *Tavares,* 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982).

Here, the motion judge concluded that the defendant's mother voluntarily allowed Jose to enter the home. Essentially, the motion judge found that the defendant's mother invited Jose into the home in a setting that was noncoercive, without influence by orders or threats. There are no findings that the defendant's mother appeared confused or unable to understand the officer's request. The evidence presented amply supports these findings. Jose testified that, after ascertaining that the defendant was at home and with the victim, he asked the defendant's mother if he could "go and see [the defendant]." The defendant's mother, who understands English,[8] gave Jose permission to enter the house and directed him to the bedroom occupied by the defendant and the victim. We therefore conclude that there was no error in the judge's determination that Jose entered the defendant's home with the consent of the defendant's mother. Accordingly, the judge did not err in denying the defendant's motion to suppress.

c. *Exclusion of evidence of another accusation claimed to be false.* The defendant claims that the trial judge erred in precluding his counsel from presenting evidence that the victim made a false prior accusation of sexual assault. He argued before the judge, and now here, that he was entitled to use the victim's prior accusation to impeach her credibility. He also suggests, for the first time on appeal, that evidence of the prior accusation was relevant to show the victim's state of mind, bias, or a common scheme, and that its exclusion, in relation to those purposes, resulted in a substantial risk of a miscarriage of justice.

i. *The prior allegation.* In the spring of 2001, the victim reported to one of her teachers that a school bus driver had touched her breasts and buttocks as she entered the bus. A school official contacted the New Bedford police department, which set up an interview with the victim in coordination with the Department of Social Services. According to the initial report completed by a detective assigned to the case, the victim made several inconsistent statements related to the time of the incident and the conduct of the bus driver. Specifically, the victim stated during the interview that the bus driver did not touch a private part of her body, but rather "snapped" her thong

---

[8]See note 5, *supra.*

underwear five times, which was contrary to what she initially reported to her teacher.[9] The detective also learned that the victim told her mother that the driver had "touched her all over," but then told her father that the driver touched her breasts and tried to put his hand up her skirt. Citing the "inconsistencies" in the victim's allegations, the investigating officer chose not to file any charges. Instead, she placed the case on file with the possibility of reopening it at a later time.

ii. Bohannon *analysis.* "The well-established rule in Massachusetts is that '[s]pecific acts of prior misconduct of the witness . . . not material to the case in which he testifies cannot be shown by the testimony of impeaching witnesses or other extrinsic evidence to affect [the witness's] credibility.' " *Commonwealth* v. *LaVelle*, 414 Mass. 146, 151 (1993), quoting from Liacos, Massachusetts Evidence 149 (5th ed. 1981). However, in *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978), the court carved a narrow exception to the general rule to be applied in unusual fact situations where "the interest of justice forbids strict application of the rule." *Commonwealth* v. *LaVelle*, *supra.* The court emphasized the narrowness of the exception to the general rule in *Commonwealth* v. *LaVelle*, *supra.* It stated:

> "We have applied this exception in only one case, *Commonwealth* v. *Bohannon*, where we allowed evidence of prior false accusations of rape to impeach a witness's credibility. Specifically, the special circumstances included: 'the witness was the victim in the case on trial, her consent was the central issue, she was the only Commonwealth witness on that issue, her testimony was inconsistent and confused, and there was a basis in independent third-party

---

[9]When asked at the interview if she was telling the truth, the victim began crying and stated, "I'm scared." She went on to say that she did not want to come to the interview, stating "he never used to do anything now he does." Later on during the interview, the victim asked, "If I'm not telling the truth what would happen?" and if she would be in trouble with the police or go to jail. The interviewer assured the victim that she would not be in trouble and then asked the victim if she was "making all this up," to which the victim responded "no." After the interview, the detective spoke to the victim's father and told him about the victim's concern about what would happen to her if she was not telling the truth. The victim's father said that he had caught the victim lying in the past and apologized for her behavior.

records for concluding that the prior accusations of the same type of crime had been made and were false.' "

"[T]o open the gate to cross-examination, the evidence of falsity of an accusation must be solid, as when the accusing witness has recanted the other allegation." *Commonwealth* v. *Wise*, 39 Mass. App. Ct. 922, 923 (1995). See *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. 487, 490-492 (1987). The victim's mere failure to prosecute or confirm prior allegations of sexual assault, or the Commonwealth's decision not to move forward with criminal charges, are insufficient bases for inferring that the allegations in question are false. See *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 319 (1994) ("Evidence that the victim failed to pursue a claim is not evidence that the claim was falsely made"); *Commonwealth* v. *Talbot*, 444 Mass. 586, 591 (2005) ("mere fact that the witness had said she was joking does not establish that her statement was false"); *Commonwealth* v. *Hicks, supra* at 490-491 (falsity of allegations not proven by victim simply dropping charges against alleged assailant); *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. 699, 709-710 (1988) (victim's failure to confirm previous allegations of abuse does not constitute "concrete evidence" that allegations were false); *Commonwealth* v. *Wise, supra* (authorities' decision not to initiate prosecution based on prior allegations insufficient basis to establish that they were false). Contrast *Commonwealth* v. *Nichols*, 37 Mass. App. Ct. 332, 333-335 (1994) (complaining party's admission that allegations were false sufficient to establish their falsity for *Bohannon* purposes).

We find no abuse of discretion in the present case. As in *Bohannon*, there was only one eyewitness, the victim. Here, however, the evidence failed to establish that the victim's prior accusation against the bus driver was false. The detective assigned to investigate the victim's allegation against the bus driver concluded merely that the victim's statements were "inconsistent." This conclusion, and the detective's decision not to file charges, does not establish that the accusation was false. See *Commonwealth* v. *Talbot, supra*; *Commonwealth* v. *Wise, supra*. Moreover, unlike *Bohannon*, consent of the victim was not a central issue in the present case, the victim's testimony was not

inconsistent and confused, nor was there a pattern of false allegations of the specific crime which was the subject of the trial. Given this factual predicate, we hold that the trial judge did not abuse his discretion in refusing to permit the defendant to cross-examine the victim about the allegedly false accusation made by her against a school bus driver.

The defendant also argues, for the first time on appeal, that evidence of the victim's prior accusation was admissible to prove her state of mind, bias, or a common scheme. Again, it has not been shown that the victim's prior accusation was false. See *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. at 492 ("Not only did the defendant not raise this issue at trial, but, here again, the questions were pertinent only if there was threshold evidence warranting a conclusion that the allegations were false"). Moreover, the defendant has failed to point to any evidence demonstrating that the victim was biased against him or that she was engaging in a common scheme. Nor has he made any cogent argument relating to the victim's state of mind and how that state of mind is relevant to any issue at trial. Rather, he has simply repackaged his *Bohannon* argument under another name. In sum, we find no merit to this argument.

d. *Prosecutor's closing argument.* Finally, the defendant alleges that a portion of the prosecutor's closing argument was improper since she called upon the jury to speculate on the evidence with the following comment: "Now, if they are making out in a public place in Fall River, what do you think is going on in a private place in his bedroom?" We will assume, without deciding, that the statement was improper because it had the effect of encouraging the jury to speculate that the defendant committed the criminal acts charged while the victim was in his bedroom. We evaluate a prosecutor's improper remarks to the jury to determine whether those statements constituted prejudicial error. *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997).

In making this determination, we consider "[t]he cumulative effect of all the errors in the context of the entire argument and the case as a whole." *Ibid.* In addition, the following factors are considered: "whether the defense counsel seasonably objected to the arguments at trial; whether the judge's instructions mitigated the error; whether the errors in the arguments went to

the heart of the issues at trial or concerned collateral matters; whether the jury would be able to sort out the excessive claims made by the prosecutor; and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant." *Ibid.* (citations omitted).

After a careful review of the prosecutor's entire closing argument, we conclude that any impropriety in the challenged statement was not prejudicial. The prosecutor's remark was brief, not repeated, and neutralized by the judge's instructions that the jury were not to "speculate or engage in surmise."

*Judgment affirmed.*