PEREIRA, COMMONWEALTH vs., 100 Mass. App. Ct. 411

 
 COMMONWEALTH vs. LUIS H. PEREIRA.

100 Mass. App. Ct. 411
 July 14, 2021 - October 14, 2021

Court Below: District Court, New Bedford Division
Present: Blake, Shin, & Walsh, JJ.

 

Receiving Stolen Goods. Firearms. Search and Seizure, Motor vehicle, Probable cause. Practice, Criminal, Motion to suppress, Mistrial, Identification of defendant in courtroom, Assistance of counsel. Probable Cause. Evidence, Informer, Relevancy and materiality, Prior misconduct.

A District Court judge properly denied the criminal defendant's pretrial motion to suppress a firearm seized by police following a warrantless search of his motor vehicle, where sufficient probable cause existed that the defendant possessed that firearm illegally, in that the level of detail in information that a confidential informant had provided to police about the attempted sale of that firearm gave rise to a reasonable inference that the informant's basis of knowledge was personal observation, in that the information was current and received within a short time before the police saw and ultimately stopped the vehicle in which the defendant was traveling, and in that it was reasonable to infer that a firearm being sold on the street was more likely to be possessed illegally and that the attempted sale did not comport with the statutory requirements for a sale. [413-418]

At the trial of a criminal complaint charging, inter alia, receiving stolen property, the judge did not err in allowing the owner of the property to testify as to details of its theft, where the testimony was properly admitted to prove an essential element of the offense (i.e., that the property was stolen), and where evidence that the defendant may have been the person who stole the property was relevant to the issue whether the defendant knew the property was stolen. [419-420]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the judge's decision not to declare a mistrial sua sponte in response to a witness's spontaneous in-court identification of the defendant, where nothing in the record suggested that defense counsel had not been accurately representing the defendant's wishes in requesting an agreed-upon jury instruction striking the testimony instead of moving for a mistrial. [420-422]

At the trial of a criminal complaint charging, inter alia, receiving stolen property, the evidence was sufficient to permit the jury to find beyond a reasonable doubt that the defendant knew or believed the property at issue was stolen. [422-423]

COMPLAINTS received and sworn to in the New Bedford Division of the District Court Department on February 20, 2015, and March 19, 2018.

 Page 412 

 A pretrial motion to suppress evidence was heard by John P. Stapleton, J., and the cases were tried before Edward H. Sharkansky, J.

 Benjamin Leatherman for the defendant.

 Mary O'Neil, Assistant District Attorney, for the Commonwealth.

 BLAKE, J. Following a jury trial in the District Court, the defendant, Luis H. Pereira, was convicted of carrying a firearm without a license, receiving stolen property with a value in excess of $250 (gun), and receiving stolen property with a value of $250 or less (holster). [Note 1] Prior to trial, the defendant filed a motion to suppress, which was denied after an evidentiary hearing. [Note 2] The defendant appeals, claiming that (1) the motion judge erred in denying the defendant's motion to suppress, (2) the trial judge erred in allowing the owner of the stolen property to testify to the details of the theft, (3) the trial judge should have declared a mistrial, and (4) the evidence was insufficient on the charges of receiving stolen property. We affirm. 

 Motion to suppress. 1. Facts. "We summarize the judge's . . . findings of fact, supplementing with additional facts from testimony that the judge explicitly or implicitly credited." Commonwealth v. Soriano-Lara, 99 Mass. App. Ct. 525, 526 (2021), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008). On February 15, 2015, Detective Jonathan Lagoa of the New Bedford Police Department was contacted by a confidential informant (CI), who had previously provided information that had led to the seizure of heroin and cocaine and the arrest and conviction of a particular individual.

 The CI informed Lagoa that "a male known to it [Note 3] as Louie was operating in a blue pickup truck and was attempting to sell a black firearm." The CI provided a specific Massachusetts registration number of the pickup truck and said that "Tabor Village Remodeling" was lettered on the side of the truck. The operator

 Page 413 

 of the truck was a white male, five feet, ten inches tall, with a medium build, brown hair, brown eyes, and a first name of "Louie." The CI said that it last saw "Louie," who was attempting to sell a firearm, on Acushnet Avenue in the North End of New Bedford (city). Lagoa received the CI's call within an hour of the CI's observations. At the motion hearing, Lagoa was asked, "[D]id you know if Louie had a card to possess that firearm or to sell it?" Lagoa responded, "The [CI] didn't believe so." 

 Immediately after receiving the CI's tip, Lagoa relayed the information to Detective George Lozado, who was patrolling the North End of the city, undercover, with his partner. Lozado used the mobile data terminal in his unmarked police cruiser to obtain information on the license plate number provided by the CI from the registry of motor vehicles. He discovered that the registered owner of the truck, Protase Woodward of West Tisbury, had an expired license to carry firearms and a second, suspended license to carry firearms, and that Woodward's driver's license was revoked and nonrenewable. 

 At approximately 5:14 p.m. -- roughly ninety minutes after learning of the CI's tip -- Lozado learned that the blue pickup truck was heading south on Acushnet Avenue; officers located and followed the truck. After the driver, who was later identified as the defendant, took a right turn at the intersection of Deane Street and Acushnet Avenue, multiple police cruisers boxed in the pickup truck. Lozado approached the truck, asked the defendant to step from it, and pat frisked him for weapons. Finding none, Lozado asked the defendant "if there's anything in the vehicle that [he] need[ed] to be concerned with for safety reasons." The defendant responded that he did not know what Lozado was talking about. The defendant was placed in handcuffs and brought to the back of the truck. In the truck bed, police saw a metal toolbox along the side of the bed, in the left-hand corner; they opened the box and located a black Smith and Wesson M&P nine millimeter firearm, wrapped in a gray sweatshirt, along with a brown Cavalry shoulder holster, and fifteen rounds of ammunition. The police determined that the defendant did not have a license to carry firearms and that his driver's license was revoked.

 2. Discussion. "Generally, [i]n reviewing a ruling on a motion to suppress, we accept the [motion] judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law . . . . It is then [o]ur duty . . . to make an independent determination of the correctness

 Page 414 

 of the [motion] judge's application of constitutional principles to the facts as found. . . . To the extent the motion judge made credibility determinations relevant to his subsidiary findings of fact, we adhere to the normal standard of review, affording such findings substantial deference and accepting them unless not warranted by the evidence" (quotations and citations omitted). Commonwealth v. Miller, 486 Mass. 78, 81-82 (2020).

 Although there is a legal presumption that warrantless searches are unreasonable, they "may be justifiable, . . . if the circumstances of the search fall within an established exception to the warrant requirement" (citation omitted). Commonwealth v. Arias, 481 Mass. 604, 610 (2019). One such exception involves automobiles. See Commonwealth v. Ortiz, 487 Mass. 602, 606 (2021); Commonwealth v. Motta, 424 Mass. 117, 123 (1997). "Because the inherent mobility of automobiles creates an exigency that they, and the contraband there is probable cause to believe they contain, can quickly be moved away while a warrant is being sought, less stringent warrant requirements have been applied to vehicles" (quotations and citations omitted). Ortiz, supra. "[P]olice are permitted to search a vehicle based upon probable cause to believe that it contains evidence of a crime." Commonwealth v. Davis, 481 Mass. 210, 220 (2019). Therefore, the question here is whether the police "had probable cause to believe that they would find the instrumentality of a crime or evidence pertaining to a crime in the [truck]." Id., quoting Commonwealth v. Johnson, 461 Mass. 44, 49 (2011). 

 Probable cause is defined as "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Commonwealth v. Hanright, 466 Mass. 303, 312 (2013), quoting Commonwealth v. Stevens, 362 Mass. 24, 26 (1972). The probable cause analysis "is a 'fact-intensive inquiry, and must be resolved based on the particular facts of each case.'" Commonwealth v. Long, 482 Mass. 804, 809 (2019), quoting Commonwealth v. Holley, 478 Mass. 508, 522 (2017). Where, as here, the police seek to establish probable cause based on a CI's tip, we apply the two-pronged Aguilar-Spinelli test. [Note 4] See Spinelli v. 

 Page 415 

United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964).

 Here, the defendant claims that his motion to suppress should have been allowed because the Commonwealth presented insufficient evidence to demonstrate probable cause that the defendant was committing a crime. Specifically, he argues that the evidence that the CI "did not believe" that "Louie" had a license to carry a firearm does not meet the basis of knowledge prong of the Aguilar-Spinelli test. [Note 5] Put another way, the defendant contends that the CI had insufficient knowledge that the defendant possessed a firearm illegally. 

 The Commonwealth responds that under these circumstances, the CI's use of the term "belief" indicated "an informed opinion based on knowledge of facts." Although the motion judge's findings are silent on this point, he did credit the police officers' testimony. In any event, we may affirm a ruling on any grounds supported by the record. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).

 While being in possession of a firearm does not necessarily indicate illegal possession, see Commonwealth v. Alvarado, 423 Mass. 266, 269 (1996), we consider the circumstances as a whole, see Commonwealth v. Williams, 422 Mass. 111, 116 (1996). Here, the level of detail provided by the CI gave rise to a reasonable inference that its basis of knowledge was personal observation. Police officers saw the pickup truck described by the CI, being operated in the North End of the city -- the same area where the CI said "Louie" was trying to sell a firearm -- shortly

 Page 416 

 after receiving the tip. The police quickly corroborated the location, color, registration number, and lettering of the pickup truck, all of which matched the CI's tip. Moreover, the police learned that the registered owner of the truck had an expired license to carry firearms and a second, suspended license to carry firearms, before determining who was driving the truck. These specific details indicated that the CI's information was not gleaned from "casual rumor." Commonwealth v. Alfonso A., 438 Mass. 372, 374 (2003). Rather, this level of detail demonstrated the CI's "inside knowledge" of the defendant's activities. See Commonwealth v. Welch, 420 Mass. 646, 651-652 (1995) (level of detail permitted inference informant "had direct knowledge"). Contrast Commonwealth v. Mubdi, 456 Mass. 385, 397-398 (2010) (tip did not provide "any prediction of the suspects' future behavior that could be corroborated by police officers and demonstrate the caller's inside knowledge of the suspects' activities"). The CI's information was current as of the moment it was relayed, and it was received within a short time before the police saw, and ultimately stopped, the pickup truck. See Commonwealth v. Alvarez, 422 Mass. 198, 207 (1996) ("The promptness of the information, the specificity of the observations, and the particularity of the detail as to location permitted the inference" that informant's tip was based on personal observation, thus satisfying basis of knowledge prong).

 While not contesting that the specificity of the tip established the CI's basis of knowledge that there was a firearm in the truck, the defendant argues that the CI's mere "belief" that "Louie" did not have a license to carry a firearm was insufficient to establish probable cause that the firearm was illegal. But here, we have more than the CI's belief. First, the CI reported that "Louie" was trying to sell the firearm on the street, i.e., from the pickup truck. We think it reasonable to infer that a firearm being sold on the street is more likely to be possessed illegally and that the attempted sale did not comport with the statutory requirements for a sale. [Note 6] Cf. Commonwealth v. Brookins, 416 Mass. 97, 104 (1993) (defendant's possession of gun combined with criminal activity

 Page 417 

 and flight provided probable cause that he did not have license to carry firearm); Commonwealth v. Edwards, 71 Mass. App. Ct. 716, 720 (2008), cert. denied, 556 U.S. 1155 (2009) (defendant's flight from scene provided probable cause that he did not have license to carry firearm). Contrast Commonwealth v. Couture, 407 Mass. 178, 181, cert. denied, 498 U.S. 951 (1990) ("unadorned fact" of possession of firearm insufficient to establish probable cause that defendant illegally possessed gun). Thus, unlike in Couture, the CI's observations of the attempted street sale provided more than an "unadorned fact" that "Louie" possessed a firearm. Indeed, here the police had a reasonable belief that there was a connection between the pickup truck and the illegal possession or sale of the firearm. Compare Commonwealth v. Suriel, 91 Mass. App. Ct. 604, 607, cert. denied, 138 S. Ct. 484 (2017) (circumstances and location of firearm transaction gave reason to suspect unlawful sale), with Couture, supra at 180 ("[I]t has not [been] shown that . . . there was a connection between the vehicle and any criminal activity of the defendant, an essential element to a finding of probable cause" [citation omitted]). 

 Moreover, the police observed the pickup truck described by the CI being operated in the North End of the city, within a relatively short time after receipt of the CI's tip. This added to the probable cause analysis. See Commonwealth v. Holness, 93 Mass. App. Ct. 368, 374 (2018) ("The motion judge properly determined that the proximity of the [vehicle], in time and location, to the two shootings showed a possible link that was enough to justify a search of the vehicle pursuant to the automobile exception to the warrant requirement"). The defendant agreed to step out of the truck after it was stopped by police. [Note 7] Lozado pat frisked the defendant for weapons; none were found. In these 

 Page 418 

circumstances, and given that the potential sale of an illegal gun on the street presented an immediate threat to public safety, "the inherent mobility of the motor vehicle provide[d] the exigency necessary to justify a warrantless search." Id. See Commonwealth v. Johnson, 36 Mass. App. Ct. 336, 337 (1994) (carrying of guns in public is serious public safety concern). See also Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 557-558 (2002) (report of shots just fired is public safety concern).

 Probable cause is anchored in belief, not in absolute certainty. See Hanright, 466 Mass. at 311-312. See also Commonwealth v. Defrancesco, 99 Mass. App. Ct. 208, 215 (2021) ("The test is probable cause, not certainty" [citation omitted]). And probable cause does not demand a showing that a belief is correct or more likely true than not true. See Commonwealth v. Skea, 18 Mass. App. Ct. 685, 689 (1984). Although a close case, we conclude that the motion to suppress was properly denied.

 The trial. 1. Facts. A.G., the owner of the gun and holster recovered by the police, testified that on January 29, 2015, an unknown person approached him through an open garage door at his home in Dartmouth. The person offered to shovel his driveway for a reasonable price, and A.G. agreed. A.G. recalled that the individual was named "Lou something or other" and that he was driving a "blackish, very dark-colored, small . . . Ford Ranger truck or something like that." The truck had distinctive markings that A.G. thought said, "Taber Landscaping or Remodeling or something like that." A.G. had to leave for an appointment before the shoveling was completed. He closed the garage door by reaching into his unlocked Volvo that was parked in the driveway, and pressing the remote garage door opener on the visor of the car. [Note 8] A.G. said that the individual shoveling "watch[ed] [him] in this procedure." A.G. testified that someone could gain access to his "whole home" by using the remote garage door opener to open the garage.

 When A.G. returned home, approximately three hours later, the individual was gone, and the driveway was shoveled. When he tried to open the door to the Volvo to use the remote garage door opener, the car door was locked, which A.G. described as "strange" and inconsistent with his habit. As was his routine, A.G. checked the security of his firearms before he went to bed that evening and found one missing. He described the gun, 

 Page 419 

including the first digits in the serial number, that he had purchased approximately six months earlier. Based on the purchase price and some work that he had done on the gun, A.G. valued it at about $1,000. He also described the distinctive holster that was missing, and he estimated the cost at "another hundred dollars."

 When asked to describe the individual who shoveled his driveway, A.G. said that the man had short, dark, spiky hair, smiled a lot, and was just below average height, "kind of chunky or husky," and "clean-shaven per se, but with kind of a -- a scruffy, maybe four- or five-day beard." He estimated that the man was between the ages of thirty-two and forty-five. Despite being directed not to make an in-court identification, while the jury were present, A.G. blurted out that he "recognize[d] the individual here" as the defendant. 

 2. Testimony concerning the theft. The defendant claims that the judge erred in allowing A.G. to testify about the details of the theft because the defendant was charged with receiving stolen property, and not the theft itself. [Note 9] He argues A.G.'s testimony should have been limited to the facts that his firearm and holster were stolen and that any evidence admitted beyond that was error, because it was irrelevant and its potential for unfair prejudice to the defendant outweighed its probative value. This argument, however, fails to consider that the evidence was properly admitted to prove an essential element of the offense of receiving stolen property -- that the property was stolen. See Commonwealth v. Rodriguez, 476 Mass. 367, 373 (2017). And while we agree that someone cannot be convicted of both stealing and receiving the same property, the Commonwealth is not precluded from "prov[ing] receipt using evidence showing that the defendant was the thief." [Note 10] Id. at 369. The testimony concerning the theft was properly admitted.

 The defendant next suggests that the challenged testimony constituted inadmissible prior bad act evidence. This argument also misses the mark. The Commonwealth must prove, beyond a reasonable doubt, that the defendant knew the property was stolen. Rodriguez, 476 Mass. at 373 ("Receipt of stolen property 

 Page 420 

requires that . . . the defendant knew that the property had been stolen . . ."). Evidence that the defendant may have been the person who stole the property is relevant on this point, and did not improperly constitute propensity evidence. See Commonwealth v. Teixeira, 486 Mass. 617, 626 (2021) (evidence that defendant previously misbehaved may be admissible, if relevant, to prove identity, knowledge, absence of mistake, or lack of accident).

 3. Mistrial. In response to a question about using his car, A.G. testified that he was not using the Volvo but rather had an appointment to get his truck's starter replaced "[a]nd, so, I was moving to do that when the individual -- I mean, I recognize the individual here, of course." The defendant objected, and the judge called the attorneys to the sidebar, where the judge raised the question whether an instruction or a mistrial was appropriate. Defense counsel responded that due to the age of the case, "it may be that [the defendant] would be inclined to request the [jury] instruction rather . . . than ask for a mistrial." The judge then instructed the jury, without objection. [Note 11] The following day, after the conclusion of the evidence, but before closing arguments, the judge instructed the jury that he was "going to strike" A.G.'s statement that he "recognized [the defendant]." He further instructed the jury that A.G.'s statement was "no longer evidence in [the] case, and it [was] not for [the jury] to consider in [their] deliberations." In the final charge, the judge again instructed the jury that anything that he struck from the record was to be disregarded and not considered by them. After a discussion at sidebar, the defendant and the Commonwealth reported that they were content with the instructions, and the jury began their deliberations. The jury are presumed to have followed the judge's instructions. See Commonwealth v. Cheremond, 461 Mass. 397, 414 (2012).

 The defendant argues that the judge, sua sponte, should have declared a mistrial when A.G. made a spontaneous in-court

 Page 421 

 identification of the defendant. As this claim is raised for the first time on appeal, we review to determine whether, if error, it created a substantial risk of a miscarriage of justice. [Note 12] See Commonwealth v. Grandison, 433 Mass. 135, 141-142 (2001). The decision whether to declare a mistrial is within the discretion of the judge, "who is in the best position to determine whether or not anything has happened likely to affect the justice of the verdict." Commonwealth v. Costa, 69 Mass. App. Ct. 823, 826-827 (2007), quoting Curley v. Boston Herald-Traveler Corp., 314 Mass. 31, 31-32 (1943). "Generally, as long as the judge's instructions are prompt and the jury do not hear the inadmissible evidence again, a mistrial is unnecessary." Costa, supra at 827, quoting Commonwealth v. Kilburn, 426 Mass. 31, 38 (1997). 

 Moreover, when the judge asked whether the defendant wanted a mistrial, defense counsel responded that based on the age of the case, he did not think so. The defendant claims that the lack of a colloquy or discussion on the record suggests that the defendant was not part of the decision to decline a mistrial. But there is also nothing in the record that suggests defense counsel was not accurately representing the wishes of his client. In fact, the record reflects that after a recess, the judge immediately gave the agreed-upon instruction, and defense counsel confirmed the next day that there was "no reconsideration as to whether this case should go to the jury." On this basis alone, the judge was not required to declare a mistrial sua sponte.

 For the first time on appeal, the defendant appears to contend that his trial counsel's failure to request a mistrial constituted the ineffective assistance of counsel. Generally, to prevail on an ineffective assistance of counsel claim a defendant must demonstrate that, but for his counsel's "serious incompetency, inefficiency, or inattention," Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), "the result of the proceeding would have been different," Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), quoting Strickland v. Washington, 466 U.S. 668, 694 (1984). Here, the claim is presented in its "weakest form," as it is asserted for the first time on direct appeal, which our case law disfavors. See Commonwealth v. Zinser, 446 Mass. 807, 810-811 (2006), citing Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). Because this claim was not presented to the trial judge through a

 Page 422 

 motion for a new trial, the record does not contain an affidavit from trial counsel or one from the defendant. If defense counsel misrepresented the defendant's wishes in declining a mistrial, the trial court is the proper place to raise such an issue in the first instance. The defendant has failed to make a minimal showing that his case falls within the narrow exception where ineffectiveness appears indisputably on the trial record. See Zinser, supra at 811-812.

 4. Sufficiency of the evidence. Finally, the defendant contends that the evidence was insufficient to prove that he knew or believed that the firearm and holster were stolen, a necessary element of the crime of receiving stolen property. See generally G. L. c. 266, § 60. [Note 13] "In determining whether the Commonwealth met its burden to establish each element of the offense charged, we apply the familiar Latimore standard. . . . '[The] question is whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Colas, 486 Mass. 831, 836 (2021), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). 

 Direct evidence of the stolen status of the goods is not necessary for the Commonwealth to meet its burden of proof. See Commonwealth v. Dellamano, 393 Mass. 132, 138 (1984). In fact, "[e]vidence tending to prove that a defendant knew goods received by him were stolen is, in the nature of the crime, likely to be circumstantial." Commonwealth v. McGann, 20 Mass. App. Ct. 59, 66 (1985). Here, in his statements to police, the defendant first denied knowing anything about the gun, and later said that he bought it "off of a guy on the street for [fifty dollars]." From this, the jury could conclude that a person who buys a firearm worth approximately $1,000 under these conditions knew or should have known that the firearm was stolen. That the pickup truck in which the defendant was stopped was linked to the stolen property makes the defendant's claim of where the gun came from suspicious. This suggests a consciousness of guilt, which the jury were entitled to consider as to whether the defendant knew the gun and holster were stolen. See Commonwealth v. Aponte, 71 Mass. App. Ct. 758, 762-763 (2008) ("If the defendant's possession

 Page 423 

 of property occurs in a context fraught with suspicion, a fact finder may draw an inference that the defendant knew he was holding stolen goods" [quotation and citation omitted]). The motion for a required finding of not guilty was properly denied.

 Judgments affirmed.

FOOTNOTES
[Note 1] The judge entered a required finding of not guilty on a charge of carrying a loaded firearm, and on so much of one count of receiving stolen property as alleged that the property described there was worth more than $250. The Commonwealth moved to dismiss a charge of unlicensed operation of a motor vehicle that the judge allowed. 

[Note 2] The defendant's application for interlocutory appeal was denied as untimely. 

[Note 3] "We use 'it' as a pronoun for the CI because the gender identity of the CI was not revealed . . . ." Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 80 n.3 (2020). 

[Note 4] Under this test, in order to establish probable cause for a warrantless search based on the CI's tip: 

"the [police officer] must 'be informed of (l) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the [officer] concluded that the informant was "credible" or his information "reliable" (the veracity test). Aguilar v. Texas, [378 U.S. 108, 114 (1964)]. If the informant's tip does not satisfy each aspect of the Aguilar test, other allegations . . . that corroborate the information could support a finding of probable cause. Spinelli v. United States, [393 U.S. 410, 415 (1969)]'" (citation omitted). 

Commonwealth v. Upton, 394 Mass. 363, 374-375 (1985). See Arias, 481 Mass. at 618.

[Note 5] The "usual indicia of reliability to satisfy the veracity prong" include showing "that the informant had a track record of providing reliable information in past investigations." Commonwealth v. Perez, 90 Mass. App. Ct. 548, 553-554 (2016). See Commonwealth v. Richardson, 37 Mass. App. Ct. 482, 486 (1994) (informant's "track record traditionally used to show credibility"). Here, the CI previously provided police with information that led to an arrest and convictions for drug-related offenses, thus establishing its veracity. The defendant does not argue to the contrary. 

[Note 6] General Laws c. 140, § 129C, provides that 

"[n]o person shall sell, give away, loan or otherwise transfer a rifle or shotgun or ammunition other than (a) by operation of law, or (b) to an exempt person as hereinafter described, or (c) to a licensed dealer, or (d) to a person who displays his firearm identification card, or license to carry a pistol or revolver."

It further provides that "[a] seller shall, within seven days, report all such transfers to the commissioner of the department of criminal justice information services." Id. All persons who sell or transfer a firearm must report the sale or transfer to the firearms records bureau. See G. L. c. 140, §§ 128A, 128B. The sale or transfer of a firearm must be reported in the Massachusetts gun transaction portal and include a detailed description of the transferred weapon (serial number, make, model, caliber, etc.), the seller-transferor's license information, and the buyer-transferee's license information. See G. L. c. 140, §§ 128, 128B. 

[Note 7] The police had reasonable suspicion to conduct the stop of the pickup truck, if not based on the CI's tip alone, then in combination with the information they learned about the truck's registered owner and his lack of a license to carry a firearm. See, e.g., Commonwealth v. Gonzalez, 93 Mass. App. Ct. 6, 11 (2018) (reasonable suspicion requires sufficient probability, not absolute certainty). 

[Note 8] A.G. left his home in a different vehicle. 

[Note 9] The Commonwealth contends that this claim was not preserved. Because we conclude there was no error, whether our review is under the prejudicial error or substantial risk of a miscarriage of justice standard is of no moment. 

[Note 10] Although a defendant can be charged with and convicted of both larceny of property and receiving stolen property, one of the two convictions must be set aside. See Commonwealth v. Nascimento, 421 Mass. 677, 684-685 (1996). 

[Note 11] The judge instructed the jury as follows: 

"There has never been an identification of [the defendant] as the person that was seen by [A.G.] on that day in question in his driveway. So, because the witness knows -- because [A.G.] knows that [the defendant] has been charged and is being tried for the reported crimes, the presence of [the defendant] in the courtroom is likely to be understood by [A.G.] as confirmation that the prosecutor and police believe that [the defendant] is the person whom [A.G.] saw at his house on the day in question. Under these circumstances, [A.G.] may ID the defendant, . . . in conformity with what is expected of him rather than because his memory is reliable."

[Note 12] It is uncontested that A.G. was expressly instructed by the Commonwealth not to make an in-court identification of the defendant. Because the judge struck this testimony, the Commonwealth did not reference it in closing arguments. 

[Note 13] The statute was amended to increase the property value from $250 to $1,200, effective April 13, 2018. The defendant was charged before, but tried after, the effective date. Thus, the property value for purposes of trial was either $250 or less, or over $250. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.